## CASEY, ET ALS. v. PRATT.

1. D. C. & Co. being bound on certain bills of exchange, for another firm, obtained from them, as an indemnity, a bill of exchange for $4,000, to be held as collateral security. The debt, to secure which it was given, was discharged by the acceptor, by payment, some time in April, 1837; notwithstanding which, D. C. & Co. caused the bill for $4,000 to be protested for non-payment, on the 14th April, 1837. On the 12th |May, 1837, D. C. & Co. made a deed of assignment, of all their effects, to P. as trustee, for the payment of debts, in which this bill was not included. On the 30th May, 1837, D. C. fraudulently put the bill for $4,000 in suit, against C. C., who had indorsed it for the accommodation of the drawers, and by his neglecting to make defence, a judgment was obtained, in the name of D. C. & Co. against him, which he ineffectually attempted afterwards to enjoin in Chancery. Subsequently, B. & W., creditors of D. C. & Co., obtained an assignment of the judgment from D. C. & Co. P. the trustee, exhibited his bill, to get the benefit of the judgment, alledging, that it passed to him under the assignment. Held, that as D. C. & Co. had no title to the bill, upon which the judgment was founded, at the date of the deed, none passed to the trustee by the assignment; and, that he could not deduce a title under the general clause of the assignment, by a fraudulent act of the assignor. That, although the grantor was estopped from setting up a title in himself, by alledging his own fraud, yet, that a Court of Chancery would not interfere, and divest the title of another, who did not deduce his claim through the fraudulent act of the grantor.

Error to the Chancery Court at Mobile.

The bill was filed by the defendant in error, and alledges, that the firm of D. Casey & Co. recovered a judgment against Chas. Cullum, for the sum of $4,702 43, besides cost of suit, at the February term, 1838, which was affirmed by the Supreme Court, at the January term, 1839, against Cullum, and Joseph Wiswall as his surety. That the judgment was founded on a bill of exchange, drawn by Brown & Cawly, of Mobile, on Smith & Conklin of New York, in favor of Cullum, for the sum of $4,000, dated 4th January, 1837, and was protested on the 14th April, of the same year, for non-payment. That the draft was in the hands of D. Casey & Co , at the maturity of the bill, and contin-

ued to be held as their property. That in May, 1837, D. Casey & Co. made a general assignment of all the effects of the firm, to complainant, as trustee. That Casey did not deliver to him the bill, or inform him that it was in his hands.

The bill further charges, that the firm of Bartlett & Waring, claim an interest in the judgment, by an assignment subsequent to his, and that one Joseph Wiswall also claims an interest, but it is also charged, that they had knowledge of the prior right of the complainant.

It is further charged, that a bill was filed in Chancery, by Bartlett & Waring, against D. Casey & Co., to attach the judgment aforesaid, to which bill he was a party, but of which he had no notice, and that no subpœna was served on him. That a bill was also filed in Chancery, by Cullum against D. Casey & Co., to avoid the judgment, in which all the facts are stated, and that the same solicitors filed both bills, and therefore had notice of all the facts. The prayer of the bill is, that Bartlett & Waring, and Wiswall, be enjoined from collecting the judgment from Cullum, and that it be assigned to him. Appended to the bill as an exhibit, is the schedule of the assigned effects, but this bill of exexchange is not enumerated among them.

John Bartlett, of the firm of Bartlett & Waring, answers, and admits, that to obtain payment of a debt he had against D. Casey. he filed a bill to subject the judgment against Cullum, in favor of D. Casey & Co., to which complainant was a party, but that before proceeding in it, his partner, Waring, called on complainant, and informed him of the circumstances, when he disclaimed all interest in the judgment, and that it was unnecessary to carry on the suit on his account. In consequence of this disclaimer, the matter was adjusted by the rendition of a decree by consent, in favor of B. & Waring, and a release executed to D. Casey & Co. for the debt due from them. He further insists, that D. Casey & Co. had no interest in the bill of exchange, at the time of the assignment to complainant, but that it belonged to Ransom & Spellman of New York, who, although partners of D. Casey, were also doing business in New York in their own names. He also states, that the judgment against Cullum has been assigned to him, by Waring, who has no interest in it.

D. Casey, by his answer, denies that the bill was the property of D. Casey & Co., at the time of the assignment to complainant.

He states, that the house of D. Casey & Co. had indorsed seve-ral bills of exchange, for the house of Brown & Cawly, drawn on Smith & Conklin of N. York; that before the bills matured, he be-came uneasy, and applied to Brown & Cawly for security, and that for his security, they furnished the bill of exchange described in com-plainant's bill, as an indemnity. That the drafts of Brown & Cawly, for which the last bill was an indemnity, were not paid at maturity, but were, to the amount of $3,726 95, paid by Ransom & Spellman, with their own funds, and not with the funds of D. Casey & Co. He admits the bill filed by Bartlett & Waring, to subject the judgment against Cullum, to the payment of their debt; and that Ransom & Spellman being informed of it, interposed no objection, and a decree was entered, in favor of Bartlett & Waring, they releasing their debt against D. Casey & Co.

The bill was also answered by Waring, in substance the same as that of his partner, and denying that he had any interest in the matter.

Much testimony was taken, but it is not necessary to to be here set out. The Chancellor decreed in favor of the complain-ant, from which this writ is prosecuted.

STEWART and DARGAN, for plaintiff in error. They contended, that there was no equity in the bill. That the complainant trac-ed his title to D. Casey, and that Casey obtained it by fraud.

That if the debt was valid, it did not pass by the deed—that all the debts intended to be transferred, were included in the schedule, and this was not one of them.

That at the time the deed was made, the bill on which this judgment was founded, was not a debt due Casey & Co., and therefore did not pass by the assignment. That the equity of Bartlett & Waring, was at least equal to that of the complain-ant, and this Court would not interpose between them, and for this they cited 2 Stewart, 378.

CAMPBELL, contra. This is treated by all the parties, as a va-lid, subsisting judgment, and if it were not, it must be so consid-ered, as the controversy is between parties, and privies. Nor is there any evidence impeaching the bill of exchange. D. Casey & Co., are estopped from saying it did not belong to them, as they had it in possession previous to, and after the deed of assignment;

instituted suit thereon, and recovered judgment. To prove the conclusiveness of the judgment, he referred to the cases collected by Cowan & Hill, in their Notes on Philips' Ev. 2 vol. 810.

ORMOND, J.—The object of the bill is to give the complainant the benefit of a judgment obtained by D. Casey & Co. against Charles Cullum, upon the ground, that the bill of exchange on which the judgment is founded, passed to the complainant, by a general assignment to him, by D. Casey & Co., in May, 1837, of all the effects of the firm, in trust for the creditors of the firm. That the bill of exchange was not included in the schedule of the assets accompanying the deed, but was fraudulently withheld, by Casey, and subsequently sued upon in his own name.

The right to the judgment is also asserted, by the defendant, Bartlett & Waring, who derive title thereto by an assignment of the judgment, by D. Casey & Co., obtained subsequent to the deed, under which the complainant claims, but in ignorance as they assert, of his title, and after he had disclaimed title to it.

The facts as they now appear, are, that Dennis Casey & Co. were accommodation indorsers for the firm of Brown & Cawly, on certain bills, payable in New York, on the 22d January, 1837, for about $3,700. To indemnify them against responsibility on these Bills, Brown & Cawly, handed to D. Casey & Co., for the purpose of raising money thereon, or as collateral security, a bill for $4,000, on which Charles Cullum, was an accommodation indorser. The bills drawn by Brown & Cawly, were not paid promptly, at maturity, but were paid by Ransom & Spellman, partners of D. Casey & Co. in New York, for the honor of the firm of D. Casey & Co. Soon afterwards, but when does not distinctly appear, certainly however, before the 22d of April, 1837, Smith & Conklin, the drawers of the bills of Brown & Cawly, repaid to Ransom & Spellman, the amount of the bills of Brown & Cawly, which they had taken up for the honor of D. Casey & Co. On the 14th April, 1837, D. Casey & Co. caused the bill of $4,000, which they had received as collateral security for their indorsement of the first mentioned bills, to be protested.

From this statement it is perfectly clear, that the title of D. Casey & Co. in the bill for $4,000, was extinguished by the payment of the bills, for which it was merely a collateral security. Nevertheless, it appears that D. Casey, about the 30th May, 1837,

31

put the bill in suit against C. Cullum, the indorser, and by the neglect of Cullum to make defence, obtained a judgment against him at law, which he afterwards ineffectually attempted to enjoin, in Chancery, and the judgment is now in full force against him.

As between the parties to this judgment, and those in privity with them, the record is doubtless evidence, that such a judgment was pronounced, and it is also conclusive evidence, of the facts on which the judgment is founded. · [Duchess of Kingston's case, 1 Starkie's Ev. 190.] Cullum, by permitting this judgment to be rendered against him, has precluded himself from denying, that he owed the debt on which it is founded, to D. Casey & Co.; and it may be conceded, that he is placed under the same interdict, as it relates to each of the parties, who claim by assignment from D. Casey & Co., and are therefore invested with all their rights. The case has been strenuously argued, as if the solution of this question settled the difficulty, but that, in truth, is not the question presented on the bill. It is not whether this judgment is valid, or invalid; but it is, whether, conceding the judgment to be valid, the complainant has shown a title to it.

It is not pretended, that the title passed by actual transfer of the bill, or by an equitable assignment, by virtue of the schedule attached to the deed; but, it is insisted, that it passed in equity, because it was the property of D. Casey & Co. at the time the deed was made, and by the deed, all the effects of the firm of D. Casey & Co. were conveyed to the complainant, whether mentioned in the schedule or not. The question then, is resolved into the simple proposition, had D. Casey & Co. any property, legal or equitable, in the bill of exchange, at the time the deed was made. Now, at the time the deed, on which the complainant relies, was made, on the 12th May, 1837, the bill was not the property of D. Casey & Co.; it had, by the payment of the debt, to secure which it was made, become mere waste paper in the hands of D. Casey & Co., and if they had actually transferred it to the complainant, he could have acquired no title to it, because they had none to confer. Can it be contended, that the deed of assignment, gives to the complainant a title, which he can enforce against any one, to all the fraudulent acquisitions of the grantor, merely because the inception of the fraud, dated back to a time anterior to the assignment? Even that pretension cannot be set

up in this case, because, before the deed was made, the bill had been discharged, and D. Casey & Co. had not the right even to the possession of the paper, on which the bill was written.

It may be conceded, that if this controversy was between Casey & Co., and the complainant, the fact, that the bill was dated anterior to the deed, would be conclusive against them, and they would not be permitted to aver the contrary, and rely upon their own fraudulent acquisition, subsequent to the date of the deed of assignment; but that is not the predicament of the case. Casey & Co. have no interest whatever in this controversy, which is between the complainant and an assignee of the judgment, who is not compelled to deduce his title, through the fraudulent act of Casey & Co.; but who, it appears, paid a full consideration for it, after the claim had been reduced into a judgment.

We do not, however, determine this case upon the comparative merits of the two claims. If the aid of this Court was required to enforce either, it might perhaps be well doubted, whether the Court would lend its aid, to enforce a claim, which, though matured into a judgment, it is now evident was not founded upon an actual existing debt. But Bartlett & Waring, are not asking the aid of this Court. Our interposition is sought by the complainant, who in effect, asks us to deprive Bartlett & Waring of a right, by giving him the benefit of a fraudulent act of D. Casey & Co. In such a scramble, for that which really belongs to another, this Court cannot lend its aid. So far as the parties are protected, and supported by legal presumptions, which cannot be contradicted, this Court may not have the right to interpose, and deprive them of them ; but when they seek our aid, to assist them in enforcing them, the matter assumes a different aspect, and we may then inquire, whether in equity and conscience, they are entitled to the aid of the Court.

This view is decisive of the present case, and renders it unnecessary to consider the other questions argued at the bar. The decree of the Chancellor must be reversed, and a decree be here rendered, dismissing the bill, at the joint costs of the complainant and Bartlett; Waring, as it appears, having no interest in the controversy.

ORMOND, J.—During the last term, a petition for a re-hearing was made in this case, and continued until the present term,

and upon further reflection, we are satisfied that a modification of the decree formerly rendered is proper.

It is very clear, that Casey & Co. cannot assert a title to the proceeds of the judgment against Cullum, as against Pratt his assignee, by alledging his own fraud. Yet that will virtually be the effect of dismissing the bill, no other person than Bartlett asserting any title to it; Wiswall, who it appears was made a party to the bill, not having answered it, and asserting no title to the fund. It is therefore ordered, that the decree heretofore made, be set aside—that the Chancellor's decree be in all things affirmed, except so far as it denies the right of Bartlett & Waring to compensation out of the judgment against Cullum; and a decree will be here rendered, giving to Bartlett, who has succeeded to the rights of Bartlett & Waring, a priority in the payment of his claim, and the residue to Pratt, as assignee of Casey & Co. Let the costs of this Court, and the Court below, be paid out of the fund.